UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MOHAMED HUSEN AHMED, et al.,<br><br>Plaintiff(s),<br>v.<br><br>UNITED STATES DEPARTMENT OF STATE, et al.,<br><br>Defendant(s). | CASE NO. C25-2754-KKE<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS |

Plaintiffs sue the U.S. Department of State, its Secretary, and several other government agencies and officials (collectively, the "Government") over a State Department policy suspending the issuance of visas to individuals from certain countries. Plaintiffs also seek to compel the State Department to issue a final decision on certain of the Plaintiffs' visa applications, which Plaintiffs claim have been stuck in administrative limbo for an unreasonable time. The Government now moves to dismiss the Complaint.

For the reasons below, the Court finds that Plaintiffs have not alleged a sufficiently prolonged delay to warrant judicial intervention and will therefore grant the motion with respect to Plaintiffs' undue delay claims. But the Court disagrees with the Government that the doctrine of consular nonreviewability bars Plaintiffs' claims challenging the State Department's visa policy itself. And, contrary to the Government's arguments, Plaintiffs do not challenge the presidential proclamation that the visa policy purports to implement. Thus, while much of the Government's

briefing focuses on the lawfulness of the proclamation, those arguments do not support dismissal. Accordingly, the Court will deny the motion as to Plaintiffs' forward-looking claims challenging the visa policy.

## I. BACKGROUND[1]

Plaintiffs are three U.S. citizens and their Somali relatives living abroad. Dkt. No. 1 ¶ 2. Each is seeking a family-based immigrant visa, either for themselves or their immediate relative. *Id.* ¶¶ 35–55. Plaintiffs are at different stages of the visa process.

### A. Plaintiffs Ahmed and Hussein

Plaintiff Mohamed Husen Ahmed ("Ahmed") is a U.S. citizen and the father of Plaintiff Abdi Mohamed Ali Hussein ("Hussein"), a Somali national residing in Ethiopia. Dkt. No. 1 ¶¶ 13–14. Ahmed filed an I-130 petition to sponsor his son, Hussein, for permanent residency. *Id.* ¶ 35. U.S. Citizenship and Immigration Services ("USCIS") approved the petition; and Hussein attended a visa interview on November 1, 2022, at the U.S. embassy in Addis Ababa. *Id.* ¶¶ 35–36. At the interview, the embassy retained his travel document, which Plaintiffs understand to indicate that the visa was "issuance-ready subject to internal checks." *Id.* ¶ 36.

About two months later, however, the embassy requested that Hussein complete a supplemental questionnaire. *Id.* ¶ 37. He submitted the questionnaire in February 2023, and his case was placed in "administrative processing." *Id.* Then, at the end of 2023, the embassy scheduled an oath appointment for Hussein in March 2024. *Id.* ¶ 39. After the appointment, the embassy returned his case to administrative processing and, a few months later, requested a valid passport. *Id.* ¶¶ 39–40. When Hussein could not provide one, the embassy initiated a "DS-232 passport-waiver track" for Hussein's case, which would permit him to apply for a visa without

[1] The facts in this background section are taken from the allegations in the Complaint, which the Court assumes to be true for purposes of this motion to dismiss.

presenting a passport. *Id.* ¶ 41; *see also* 22 C.F.R. § 42.2. That process requires concurrence by U.S. Customs and Border Patrol ("CBP"). Dkt. No. 1 ¶ 41. Relying on the embassy's instructions, Hussein's father, Ahmed, purchased Hussein a plane ticket to the United States, and Hussein completed another questionnaire. *Id.* ¶ 42. However, Hussein could not use the ticket as he never received a visa. In June 2025, the embassy informed Hussein his case was still "awaiting DS-232 waiver approval[.]" *Id.* ¶ 43 (internal quotation marks omitted).

As of the filing of this lawsuit, Plaintiffs allege the embassy has not issued or made a decision on Hussein's visa. *Id.* ¶ 44.

**B. Plaintiffs Dhoobley and Zakariye**

Plaintiff Hassan Dhoobley ("Dhoobley") is a U.S. citizen and the father of Plaintiff Zakariye Ahmed Hassan ("Zakariye"),[2] a Somali national. Dkt. No. 1 ¶¶ 17–18. Dhoobley filed an I-130 petition on behalf of Zakariye, which USCIS approved in August 2021. *Id.* ¶ 46. On December 11, 2024, Zakariye attended his visa interview at the U.S. embassy in Nairobi, Kenya. *Id.* ¶ 47. The embassy refused his visa under Section 221(g) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1201(g), and requested additional evidence—an original birth certificate and medical examination—which he states he has provided. *Id.* ¶ 47–48. In May 2025, the embassy requested that Zakariye submit a DNA test confirming his biological relationship to his father, Dhoobley. *Id.* ¶ 49. Zakariye attended his DNA collection appointment in July 2025, and the embassy confirmed receipt of the results about two months later. *Id.* ¶¶ 50–51.

As of the filing of this lawsuit, Zakariye alleges he has submitted all the evidence requested by the embassy, but the embassy has not made a final decision on his application. Dkt. No. 1 ¶ 52.

[2] To avoid confusion between the Plaintiffs, and consistent with the Complaint, the Court refers to Plaintiff Zakariye Ahmed Hassan as "Zakariye."

### C. Plaintiffs Jama and Amale

Plaintiff Samiro Jama ("Jama") is a U.S. citizen and the daughter of Plaintiff Zamzam Salad Amale ("Amale"), a Somali national. Dkt. No. 1 ¶¶ 15–16. On July 25, 2025, USCIS approved an I-130 petition filed by Jama on behalf of her mother. *Id.* ¶ 15. But unlike the other Plaintiffs, the National Visa Center and embassy have not yet scheduled a visa interview for Amale. *Id.* ¶ 55. Thus, no decision has been made on whether to issue or refuse a visa to her.

### D. Proclamation 10998 and the State Department's Visa Issuance Policy

On December 16, 2025, President Donald Trump issued Proclamation 10998, entitled "Restricting and Limiting the Entry of Foreign Nationals to Protect the Security of the United States." *See* Proclamation No. 10998, 90 Fed. Reg. 59,717 (Dec. 16, 2025); *see also* Dkt. No. 1-2. Expanding upon an earlier proclamation dealing with entry of foreign nationals into the country, Proclamation 10998 prohibited "entry into the United States" of nationals from 39 countries, including Somalia, plus the Palestinian Authority.[3] *See* Proclamation No. 10998 §§ 2–4. The Proclamation invoked Section 212(f) of the INA, which provides:

> [w]henever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate.

8 U.S.C. § 1182(f).

About two weeks later, the Department of State issued an announcement that it was "suspending or limiting entry and visa issuance to nationals of" the 39 countries listed in Proclamation 10998. Dkt. No. 1-3. The announcement then explained that "[a]pplicants who are

---

[3] Proclamation 10998 expanded upon Presidential Proclamation 10949, "Restricting the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and Other National Security and Public Safety Threats," 90 Fed. Reg. 24497 (June 10, 2025), which provides, among other things, that "[t]he entry into the United States of nationals of Somalia as immigrants and nonimmigrants is hereby suspended."

subject to Presidential Proclamation 10998 may still submit visa applications and attend scheduled interviews, but they may be ineligible for visa issuance or admission to the United States." *Id.* Plaintiffs allege that the State Department's announcement reflects a policy of "treating the Proclamation as authority to suspend visa issuance, not merely entry[,]" which Plaintiffs claim exceeds the Proclamation's scope. Dkt. No. 1 ¶¶ 33–34.

**E. Procedural History**

Plaintiffs filed this lawsuit on December 31, 2025, asserting claims under the Administrative Procedure Act ("APA"), the Mandamus Act, and the Fifth Amendment's Due Process Clause. Dkt. No. 1. Their Complaint emphasizes that "Plaintiffs do not seek an order directing that any visa be approved or that any alien be admitted." *Id.* ¶ 7. Instead, they seek (1) "an order compelling Defendants to … complete processing and render final adjudications (issue or refuse) within a defined timeline"; (2) "an injunction preventing Defendants from treating the Proclamation as a lawful excuse for indefinite nonadjudication"; and (3) "to the extent [the State Department] has adopted a categorical issuance suspension, a declaration that such policy violates" another provision of the INA—8 U.S.C. § 1152(a)(1)(A)—which concerns discrimination in the visa process. *Id.*

Plaintiffs' first two causes of action challenge the State Department's allegedly unreasonable delay in processing their visa cases and seek relief under the APA and Mandamus Act compelling a final decision on the applications. Dkt. No. 1 ¶¶ 68–76. Their third cause of action also invokes the APA but seeks an injunction preventing the Government from holding their cases "in perpetual administrative limbo" based on Proclamation 10998, which they claim concerns the "entry" of noncitizens and not eligibility for a visa. *Id.* ¶¶ 77–80. Their fourth cause of action claims that the State Department's visa policy is arbitrary, capricious, and contrary to law because it violates 8 U.S.C. § 1152(a)(1)(A)'s prohibition on nationality-based discrimination

in the issuance of visas (subject to exceptions). *Id.* ¶¶ 81–85. And their fifth cause of action claims that the State Department's inaction on their visa applications violates their procedural due process rights under the Fifth Amendment. *Id.* ¶¶ 86–87.

## II. POST-FILING DEVELOPMENTS

The Government's motion and Plaintiffs' response address additional developments in Plaintiffs' visa cases that largely occurred after this lawsuit was filed. Because these developments are not alleged in the Complaint, they are not properly before the Court on a motion to dismiss. *See Regal Art & Gifts, Inc. v. Fusion Prods., Ltd.*, No. 15-CV-04363-KAW, 2016 WL 454116, at *5 (N.D. Cal. Feb. 5, 2016) ("Facts not contained in the operative complaint … cannot be considered on a motion to dismiss."); *Lashkari v. Rubio*, No. 25-CV-10278-KAW, 2026 WL 1625373, at *3 (N.D. Cal. June 5, 2026) (declining to consider visa refusal that "occurred months after the operative complaint was filed" and was thus not pleaded in the complaint); *see also Farjoudi v. Rubio*, No. 8:25-cv-00864-FLA (KESx), 2026 WL 967424, at *3–4 (C.D. Cal. Mar. 31, 2026) (same).

Neither party addresses whether the post-filing developments are subject to judicial notice under Federal Rule of Evidence 201. And while the Court could *sua sponte* take judicial notice of them—including certain records that Plaintiffs filed with their response (Dkt. No. 12)—it declines to do so. *Hoffman v. PennyMac Holdings, LLC*, No. C17-1062JLR, 2018 WL 6448779, at *4 n.5 (W.D. Wash. Dec. 10, 2018) (declining to "*sua sponte* take judicial notice of … documents appended to the [plaintiffs'] motion" despite "discretion" to do so). Instead, the Court finds that these developments are better addressed in the context of an amended or supplemental pleading—where Plaintiffs can re-articulate their claims in light of new events—or on summary judgment with the benefit of a developed record. Nevertheless, the Court will summarize the developments here for background.

First, Hussein's case has progressed since the Complaint was filed. In December 2025, the embassy emailed Ahmed, informing him that Hussein's application had again been refused under INA Section 221(g), and requested that Hussein complete a new medical examination. Dkt. No. 12 ¶ 2. Hussein submitted the updated medical examination the next month. *Id.* Then, in March 2026, Hussein received an email refusing his visa application on the ground that he is ineligible for a visa under Proclamation 10998 and Section 212(f) of the INA. Dkt. No. 12-2. The email states that the denial cannot be appealed and that no "National Interest Exception" will be granted in his case. *Id.* at 2.

In Zakariye's case, after this lawsuit was filed, the embassy requested an updated police certificate, affidavit of support, and joint-sponsor information. Dkt. No. 12-4. According to Plaintiffs' counsel, Zakariye submitted these records. Dkt. No. 12 ¶ 6. But after he did so, the embassy requested another updated police certificate, which Zakariye is in the process of obtaining and submitting. *Id.*

Finally, in early 2026, the State Department issued a cable to embassies instructing consular officials that they should refuse visas to "nationals of countries who are subject to a suspension of immigrant visas under 212(f) per Presidential Proclamation 10998[.]" Dkt. No. 12 ¶ 8; Dkt. No. 12-6. Weeks later, it issued a public notice stating that "pursuant to Presidential Proclamation 10998," the State Department was suspending visa issuance to nationals of 19 designated countries, including Somalia, and partially suspending visa issuance to 19 other countries. Dkt. No. 12 ¶ 9; Dkt. No. 12-7.

Again, the Court summarizes these post-filing developments as background and does not consider them in resolving the Government's motion to dismiss.

## III. LEGAL STANDARD

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court

examines the complaint to determine whether, assuming the facts alleged are true, the plaintiff has stated "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In analyzing the sufficiency of the allegations, the Court must "draw all reasonable inferences in favor of the plaintiff." *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

## IV. ANALYSIS

The Government argues that Plaintiffs fail to state a viable claim because (1) the doctrine of consular nonreviewability bars all the relief sought, (2) Proclamation 10998 is lawful and unreviewable and Plaintiffs identify no separate agency action, (3) Plaintiffs fail to state a claim for unreasonable delay, and (4) Plaintiffs lack a constitutionally protected interest in the timely adjudication of their visa applications or the applications of their family members. *See* Dkt. No. 9. The Court will address each argument in turn.

### A. Consular Nonreviewability

The Government first relies on the doctrine of consular nonreviewability, arguing that Plaintiffs' claims seek to impermissibly interfere in the State Department's decisions concerning "the admission and exclusion of" noncitizens seeking entry. Dkt. No. 9 at 4 (quoting *Sesay v. United States*, 984 F.3d 312, 316 (4th Cir. 2021)). Under the doctrine of consular nonreviewability, "ordinarily, a consular official's decision to deny a visa to a foreigner is not subject to judicial review." *Allen v. Milas*, 896 F.3d 1094, 1104 (9th Cir. 2018) (citation omitted); *see also Li Hing of Hong Kong, Inc. v. Levin*, 800 F.2d 970, 971 (9th Cir. 1986) ("[I]t has been consistently held that the consular official's decision to issue or withhold a visa is not subject either to administrative or judicial review."). Though not jurisdictional, the doctrine stems from

longstanding recognition "that the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 907 (2024) (quoting *Trump v. Hawaii*, 585 U.S. 667, 702 (2018)).

The Court will consider consular nonreviewability as it applies to Plaintiffs' claims for unreasonable delay as well as their forward-looking claims challenging the State Department's visa issuance policy.

1. Consular nonreviewability does not apply to Plaintiffs' unreasonable delay claims.

Consular nonreviewability does not bar a claim challenging a consular official's "fail[ure] to act at all." *Allen*, 896 F.3d at 1100 (citing *Rivas v. Napolitano*, 714 F.3d 1108, 1110 (9th Cir. 2013)). Thus, courts in the Ninth Circuit and elsewhere have held that "the doctrine does not apply where plaintiffs seek a final decision on their visa applications rather than judicial review of a final decision." *Ashmadpour v. Rubio*, No. 2:25-CV-3730-TLN-JDP (PS), 2026 WL 2240665, at *4 (E.D. Cal. Aug. 4, 2026); *see also Bozchalooi v. U.S. Dep't of State*, No. 2:25-CV-02983-DJC-SCR, 2026 WL 1042680, at *4 (E.D. Cal. Apr. 17, 2026) ("For the doctrine to apply, a denial of a visa application must have occurred."). Put differently, the doctrine "is not triggered until a consular officer has made a decision with respect to a particular visa application." *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, 168 F. Supp. 3d 268, 290 (D.D.C. 2016).

The majority of district courts in the Ninth Circuit and elsewhere have held "that an administrative processing denial under [INA] § 221(g) is not a final decision subject to the doctrine of consular non-reviewability." *Lashkari*, 2026 WL 1625373, at *2 (citing cases); *see also Thein v. Trump*, No. CV 25-2369 (SLS), 2025 WL 2418402, at *7 (D.D.C. Aug. 21, 2025) ("For nearly a decade, the overwhelming consensus view has been that a refusal for administrative processing

does not mean that a visa candidate's application has been adjudicated." (citing cases)). Zakariye and Hussein allege that their visas were initially refused but that the embassy has continued to request additional evidence to process their applications without reaching a final decision. Dkt. No. 1 ¶¶ 39–44, 47–52; *see Kiani v. Blinken*, No. CV 23-5069-GW-JCX, 2024 WL 658961, at *5 (C.D. Cal. Jan. 4, 2024) (finding that visa refusal was not final where plaintiff was informed his case was "still pending administrative processing" and he would "receive another adjudication once such processing is complete"). Similarly, Amale does not challenge a consular official's final decision on her visa; she alleges no such decision has been made and no interview scheduled. Dkt. No. 1 ¶ 55. Accordingly, Plaintiffs' APA and mandamus claims challenging the allegedly unreasonable delay in adjudicating their visas are not subject to consular nonreviewability.[4] For the same reasons, the doctrine does not bar Plaintiffs' due process claim, which similarly challenges the Government's alleged failure to timely adjudicate Plaintiffs' visas. Dkt. No. 1 ¶¶ 86–87, Dkt. No. 11 at 10 (explaining that due process claim "is *procedural*, not substantive" and addresses the Government's alleged "indefinite nondecision").

2. <u>Consular nonreviewability does not bar forward-looking challenges to visa policies.</u>

Consular nonreviewability also does not bar Plaintiffs' APA claim seeking to enjoin the State Department from relying on Proclamation 10998 to avoid adjudicating Plaintiffs' visas or their challenge to the visa issuance policy under 8 U.S.C. § 1152(a). *See* Dkt. No. 1 ¶¶ 77–85. Both claims are forward-looking challenges to State Department policy. Plaintiffs' third cause of action asserts that the State Department's alleged suspension on adjudicating visas for nationals covered by Proclamation 10998 "exceeds what the Proclamation requires" and is thus unlawful.

---

[4] As discussed above, the parties' briefs reference post-filing developments—including, the State Department's refusal to issue a visa to Hussein pursuant to Proclamation 10998 and INA § 212(f). *See* Dkt. No. 9 at 3, Dkt. No. 12-2. Though that issue may ultimately be dispositive with respect to Plaintiff Hussein, it is not pleaded in the Complaint and thus not properly before the Court on a motion to dismiss.

*Id.* ¶¶ 65, 77–80. Their fourth cause of action claims that the State Department's policy violates 8 U.S.C. § 1152(a)(1)(A), which provides that, subject to certain exceptions, "no person shall … be discriminated against in the issuance of an immigrant visa because of the person's race, sex, nationality, place of birth, or place of residence."

Like Plaintiffs' prolonged delay claims, these claims do not seek review of a "consular official's decision to issue or withhold a visa." *Li Hing*, 800 F.2d at 971. While the Ninth Circuit does not appear to have addressed the issue, the D.C. Circuit has found it "well settled" that consular nonreviewability does not foreclose "forward-looking challenges to … regulations or policies governing consular decisions[.]" *Pietersen v. U.S. Dep't of State*, 138 F.4th 552, 560 (D.C. Cir. 2025). That view is consistent with the principles animating the doctrine—preserving primacy of the political branches over decisions of admission and exclusion—because judicial review of consular policies "assure[s] that the executive departments abide by the legislatively mandated procedures." *Int'l Union of Bricklayers & Allied Craftsmen v. Meese*, 761 F.2d 798, 801 (D.C. Cir. 1985).

The Court finds this line of authority from the D.C. Circuit persuasive and concludes that consular nonreviewability does not bar Plaintiffs' APA claims challenging the lawfulness of the State Department's visa issuance policy as it relates to Proclamation 10998 or Section 1152(a).

**B. Lawfulness of the Presidential Proclamation and Separate Agency Action**

Next, the Government argues that Plaintiffs' claims should be dismissed because Proclamation 10998 "is a valid exercise of the broad authority Congress granted the President in" Section 212(f) of the INA. Dkt. No. 9 at 6. For support, the Government relies on *Trump v. Hawaii*, 585 U.S. 667, for the proposition that Plaintiffs "cannot challenge the Proclamation based on their 'perception of its effectiveness and wisdom,' and courts 'cannot substitute [their] own

assessment for the Executive's predictive judgments.'" *Id.* at 7 (alteration in original) (quoting 585 U.S. at 708).

The Government's arguments are not well taken because none of Plaintiffs' claims challenge the Proclamation. Indeed, their Complaint expressly disclaims any intent to "challenge the President's authority to restrict entry" under Section 212(f). Dkt. No. 1 ¶ 65. Instead, Plaintiffs challenge the State Department's policy of refusing to adjudicate or issue visas for nationals of the countries listed in Proclamation 10998—a policy Plaintiffs claim is inconsistent with the Proclamation. *See* Dkt. No. 1 ¶¶ 5, 33, 65, 77–85. And they challenge the prolonged delay in the adjudication of their visa applications. *Id.* ¶¶ 68–76, 86–87. None of their claims challenge the President's authority under Section 212(f) to issue Proclamation 10998.

Relatedly, the Government contends that presidential proclamations are not subject to APA review and that the Complaint identifies no final agency action distinct from Proclamation 10998. Dkt. No. 9 at 8–10. The Court disagrees. Plaintiffs' claims are addressed to the prolonged delay in their visa cases and the State Department's no-issuance policy, as reflected in its December 2025 announcement. As for the policy, Plaintiffs contend this is a separate agency action from Proclamation 10998 because the Proclamation restricts only "entry" to the country, not eligibility for a visa. Dkt. No. 1 ¶¶ 5–6.

Under essentially identical circumstances, several courts have recently found that a policy suspending the issuance of visas is agency action distinct from a presidential proclamation barring "entry" under Section 212(f). *See, e.g.*, *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 314 (D.D.C. 2020) (finding separate agency action where State Department "exercise[d] its judgment" to "suspend[] visa adjudications when the Proclamation merely directs the suspension of 'entry'"); *Tate v. Pompeo*, 513 F. Supp. 3d 132, 143 (D.D.C. 2021) (same where State Department policy allegedly "expanded the scope of the Presidential Proclamations by adding a restriction on the

issuance of visas to the Proclamations' restriction on entry"); *Gomez v. Trump*, 485 F. Supp. 3d 145, 190–99 (D.D.C. 2020) (rejecting challenge to presidential proclamations but finding plaintiffs likely to succeed in challenge to State Department's implementation via a no-visa policy), *amended in part*, 486 F. Supp. 3d 445 (D.D.C. 2020), *and amended in part sub nom. Gomez v. Biden*, No. 20-CV-01419 (APM), 2021 WL 1037866 (D.D.C. Feb. 19, 2021). As these decisions explain, there is a "basic distinction" between visa issuance and entry "that runs throughout the INA." *Thein*, 2025 WL 2418402, at *15 (quoting *Trump*, 484 U.S. at 694). Not every visa holder may enter the United States; and, conversely, "not every inadmissible individual is necessarily ineligible for a visa." *Id.* (citing 8 U.S.C. §§ 1202(h), 1182(k)); *see also Gomez*, 485 F. Supp. 3d at 191 ("The Proclamations solely address the entry of immigrants and certain nonimmigrants into the country; they say nothing about the issuance and adjudication of visas."). Accordingly, the State Department's decision to implement a presidential proclamation barring "entry" by suspending the issuance of visas is in "no sense a ministerial implementation of presidential action." *Gomez*, 485 F. Supp. 3d at 178; *see also Milligan*, 502 F. Supp. 3d at 314 (finding State Department's no-visa policy "more than ministerial" where presidential proclamations "left [the Department] to determine how the Proclamations relate to visas").

As in the above-cited cases, the State Department's alleged policy here, as reflected in its announcement, suspends "entry *and visa issuance*"—purportedly to implement Proclamation 10998. Dkt. No. 1-3 (emphasis added). The Court therefore finds that Plaintiffs adequately allege the policy goes beyond the Proclamation and is a separate agency action subject to judicial review.

For the same reason, the Government's arguments on the lawfulness and unreviewability of Proclamation 10998 do not support dismissal. Dkt. No. 9 at 6–7, 8–10. And because the Government does not otherwise address Plaintiffs' third or fourth causes of action, the Court will deny the motion with respect to both claims.

**C. Plaintiffs' Claims for Undue Delay**

The Government contends that Plaintiffs fail to state claims for undue delay in the adjudication of their visas. Plaintiffs' first and second causes of action invoke the APA, which provides that a court shall "compel agency action … unreasonably delayed" (5 U.S.C. § 706(1)), and the Mandamus Act, which authorizes courts "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff" (28 U.S.C. § 1361). Dkt. No. 1 ¶¶ 68–76. Because "mandamus relief and relief under the APA are 'in essence' the same, when a complaint seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA," the Court "may elect to analyze the APA claim only." *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022) (quoting *R.T. Vanderbilt Co. v. Babbitt*, 113 F.3d 1061, 1065 (9th Cir. 1997)); *see also Indep. Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (The Supreme Court "has construed a claim seeking mandamus under the [Mandamus Act] 'in essence,' as one for relief under § 706 of the APA.") (quoting *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986)).

"[A] court may compel [delayed] agency action under the APA when the agency (1) has 'a clear, certain, and mandatory duty' and (2) has unreasonably delayed in performing such duty." *Vaz*, 33 F.4th at 1136 (quoting *Plaskett v. Wormuth*, 18 F.4th 1072, 1082 (9th Cir. 2021)). Defendants argue that Plaintiffs fail to support either element.

1. Mandatory duty

To state an APA claim for unreasonable delay, Plaintiffs must allege "a specific, unequivocal command placed on the agency to take a discrete agency action, and the agency has failed to take that action." *Vietnam Veterans of Am. v. Cent. Intel. Agency*, 811 F.3d 1068, 1075 (9th Cir. 2016) (cleaned up). The Government acknowledges it has a "statutory duty to adjudicate a visa application" (Dkt. No. 13 at 5), but claims it has no mandatory duty to schedule a visa

interview (*id.* at 10). *See also* 8 U.S.C. § 1202(b) ("All immigrant visa applications shall be … adjudicated by a consular officer.").

Beginning with Amale, who is still awaiting an interview, Plaintiffs do not respond to the Government's argument that no mandatory duty to schedule a visa interview exists and seem to disclaim an intent to bring an unreasonable delay claim on her behalf. *See* Dkt. No. 11 at 15 (arguing that "whether the Department has a duty to schedule an interview" is irrelevant and identifying the Department's "*post-interview* duty" to adjudicate Hussein's and Zakariye's applications as "the one Plaintiffs invoke"). Some district courts have found that "a duty to schedule a visa interview exists." *See, e.g.*, *Ghalambor v. Blinken*, No. CV 23-9377-MWF (BFMX), 2024 WL 653377, at *3 (C.D. Cal. Feb. 1, 2024) (citing cases). While others have found no such duty. *See, e.g., Throw v. Mayorkas*, No. 3:22-CV-05699-DGE, 2023 WL 2787222, at *3 (W.D. Wash. Apr. 5, 2023) (finding "no statutory or regulatory obligation requiring the State Department to schedule a consular interview by a date certain"); *Arshad v. Bitter*, No. 2:23-CV-08082-FLA (BFMX), 2024 WL 6847882, at *3 (C.D. Cal. Apr. 9, 2024) (same). Without argument by Plaintiffs on this point and given their apparent intent to abandon any unreasonable delay claim in Amale's case, the Court will dismiss Plaintiffs' first and second causes of action with respect to Amale and her daughter, Jama.[5]

As to Zakariye and Hussein, the parties disagree about whether the duty to adjudicate a visa is fulfilled upon refusal of a visa application followed by further administrative processing. *See* Dkt. No. 9 at 14–21, Dkt. No. 11 at 8–9, Dkt. No. 13 at 5–6. Courts within and outside the Ninth Circuit have come to opposing conclusions on this issue. *See Momeni v. Blinken*, No. 2:24-

[5] Because Plaintiffs do not press their unreasonable delay claims as to Amale's case, the Court does not reach the Government's additional argument that scheduling a visa interview is committed to agency discretion by law and thus immune from judicial review under the APA. Dkt. No. 9 at 17–21.

cv-04879-ODW (AGRx), 2024 WL 5112234, at *4 (C.D. Cal. Dec. 13, 2024) (explaining the split among courts in the Ninth Circuit on this issue).

This question was squarely addressed in a recent order in this District by the Honorable Barabara J. Rothstein. *Khosravi v. Rubio*, No. 2:24-cv-1227, 2025 WL 821885 (W.D. Wash. Mar. 14, 2025). That case presented very similar facts to the issues before this Court. There, the plaintiff filed a visa petition for her Iranian father, Mr. Khosravi, to come to the United States and, after an interview at the consulate in Turkey, the consular officer issued a 221(g) refusal notice and requested additional information. *Id.* at *1. Mr. Khosravi provided the requested information and for nine months his application remained in administrative processing. *Id.* at *2. After defendants moved to dismiss the case for failing to identify an unfulfilled mandatory duty, Judge Rothstein held that the APA and its implementing regulations require review and adjudication of visa applications. *Id.* at *3 (citing 5 U.S.C. § 555(b); 22 C.F.R. § 42.81(a)). Judge Rothstein then explained that this duty remained unfulfilled because "[w]hile nominally 'refused,' Khosravi's application is, by most other indications, still in the adjudicative process." *Id.* at *4 (citing evidence of continued "administrative processing").

The same rationale applies here. As in *Khosravi*, Hussein alleges that his application was refused but that his case was placed in "administrative processing" (Dkt No. 1 ¶¶ 37, 39), that he has provided all requested documents or evidence (*id.* ¶¶ 39–42), and that the embassy conveyed to him that visa issuance was "imminent pending only internal waiver concurrence" (*id.* ¶ 43). Similarly, Zakariye alleges that the embassy refused his application under 221(g) but requested additional evidence, that he submitted the requested evidence and received a receipt confirmation, but that the embassy has "not issued a final adjudication, issuance, or refusal." *Id.* ¶¶ 47–52.

Accordingly, the Court adopts and incorporates Judge Rothstein's well-reasoned analysis and joins the majority of district courts holding that a visa application has not been adjudicated

when it has been refused but remains subject to ongoing "administrative processing." *Khosravi*, 2025 WL 821885, at *4–5 (Section III(B)(1)(b)) ("However, the 'majority view'—and the more persuasive one—is that the initial refusal of a visa application pending 'administrative processing' does not discharge the consular duty to adjudicate a visa application.") (collecting cases holding same). Thus, because Zakariye's and Hussein's visa applications allegedly remain in processing limbo, Defendants have not fulfilled their mandatory duty under the APA to "adjudicate" their applications.

2. Unreasonable delay

The Government also argues that Plaintiffs fail to adequately allege that adjudication of their applications has been unreasonably delayed. Dkt. No. 9 at 21–26, Dkt. No. 13 at 12–14. The Ninth Circuit applies "the six-factor balancing test announced in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984) ('*TRAC*')" to determine whether an agency has performed its duty within a reasonable time under the APA. *Vaz*, 33 F.4th at 1137. In the visa context, the six *TRAC* factors are "grouped into four basic inquiries":

> "First, is there any rhyme or reason—congressionally prescribed or otherwise—for [an agency]'s delay (factors one and two)? Second, what are the consequences of delay if the Court does not compel the [agency] to act (factors three and five)? [Third], how might forcing the agency to act thwart its ability to address other priorities (factor four)?" Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?

*Infracost Inc. v. Blinken*, 732 F. Supp. 3d 1240, 1254 (S.D. Cal. 2024) (alterations in original) (quoting *Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 161 (D.D.C. 2022)).

As to the first inquiry, the Court considers the length of delay in light of any established time limits and the reason for any delay. Courts typically measure the period of delay from the date of the "last government action[.]" *Mahonak v. Rubio*, No. 8:24-CV-01443-FWS-DFM, 2025

WL 449044, at *16 (C.D. Cal. Feb. 10, 2025) (quoting *Nusrat v. Blinken*, No. CV 21-2801 (TJK), 2022 WL 4103860, at *6 n.6 (D.D.C. Sept. 8, 2022)).

Plaintiffs initiated this action three years after Hussein's first visa interview. Dkt. No. 1 ¶ 36. But in the intervening period, the embassy requested additional documents and evidence for his application, including, most recently, documentation for a passport waiver, which Hussein provided. *Id.* ¶¶ 39–42. This case was filed just six months after the embassy informed him his passport waiver was awaiting approval. *Id.* ¶ 43. Zakariye's visa interview occurred twelve months before this case was filed, and the embassy confirmed receipt of his DNA test just three months before the filing date. *Id.* ¶¶ 47, 51. This litigation has now been pending just over eight months.

At this point, the State Department's delay has been between eleven and fifteen months since its most recent action in each case, and this length of time is generally not found to be unreasonable. *See Infracost*, 732 F. Supp. 3d at 1254–55 (collecting cases that support 14-month delay is not unreasonable), *Khosravi*, 2025 WL 821885, at *6 (collecting cases that support 16-month delay is not unreasonable). Even focusing on the delay since Hussein's and Zakariye's first visa interviews (notwithstanding the Department's subsequent actions), courts have found much longer delays reasonable. *See Yavari v. Pompeo*, No. 2:19-CV-02524-SVW-JC, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) ("District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." (citing *Siwen Zhang v. Cissna*, 2019 WL 3241187, at *5 (C.D. Cal. April 25, 2019))); *Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1071 (N.D. Cal. 2014) ("In this district, courts have generally found delays of four years or less not to be unreasonable."). As Plaintiffs concede, "Congress has not set a mandatory consular adjudication deadline[.]" Dkt. No. 11 at 16.

As to the reason for delay, Plaintiffs acknowledge that the State Department has requested additional evidence and, in Hussein's case, initiated a visa waiver process. Dkt. No. 1 ¶¶ 39–43, 47–52. Thus, "this is not a case where there is no identifiable rationale behind Defendant[s'] delay; the [Defendants] appear[] to have needed additional information to reach a decision." *Infracost*, 732 F. Supp. 3d at 1255. Together, the first set of factors weighs in the Government's favor and against a finding of unreasonable delay. *Id.* at 1254–56.

The second inquiry focuses on the impact of delay on human health and welfare. *Aminzadeh v. Blinken*, No. 2:24-CV-02025-DSF-MRW, 2024 WL 3811153, at *7 (C.D. Cal. Aug. 9, 2024). Plaintiffs claim to have been separated from their immediate relatives for years, causing emotional distress and financial harm. Dkt. No. 1 ¶ 56. "Prolonged separation from a spouse, fiancé, or other immediate family member may be considered a risk to human health and welfare." *Isse v. Whitman*, No. CV 22-3114 (BAH), 2023 WL 4174357, at *7 (D.D.C. June 26, 2023). While the Court has no reason to doubt the toll this delay has taken on Plaintiffs and is sympathetic to the serious and regrettable effects on their well-being, these impacts are felt by every family visa applicant. *Aminzadeh*, 2024 WL 3811153, at *7 ("[A]ll noncitizens applying for family visas are separated from their families, and many applicants, or their sponsors, are relatively advanced in age."). Accordingly, the second set of factors is, at best, neutral and does not support a finding of unreasonable delay.

The information relevant to the third inquiry (impact on agency priorities) is limited. But at the motion to dismiss stage, the Court can assume that ordering Plaintiffs' relief would "necessarily come at the expense of other similarly situated applicants." *Infracost*, 732 F. Supp. 3d at 1256–57 (citation modified). Thus, this inquiry also does not support a finding of unreasonable delay.

The final inquiry requires the Court to consider any allegations of impropriety underlying the delay. The Complaint alleges that the delay in adjudicating Plaintiffs' visas during 2025 "was a bad faith" tactic to delay adjudication until Proclamation 10998 was issued. Dkt. No. 1 ¶ 4. The "mere existence of" delay, however, does not support an inference of "bad faith." *Aminzadeh*, 2024 WL 3811153, at *8. Zakariye submitted his application in December 2024. Dkt. No. 1 ¶ 47. So, the fact that the embassy did not adjudicate it in 2025—when it had been pending just months—does not suggest bad faith. And considering the embassy's actions that year to advance Hussein's case—in particular, initiating a passport waiver process—the Complaint's bare allegation of bad faith is not supported by the facts alleged. Dkt. No. 1 ¶¶ 41–43. Plaintiffs also contend that the embassy's request for an updated medical examination days after Proclamation 10998 supports a bad faith intent to delay Hussein's visa until the Proclamation's effective period. Dkt. No. 11 at 16. The embassy's request is not pled in the Complaint and thus not properly before the Court. *See* Dkt. No. 12 ¶ 2. In any event, it is insufficient to plausibly support bad faith considering that two years had passed since the embassy's previous request for a medical exam, and it was reasonable for the embassy to request an updated one. Dkt. No. 1 ¶ 39.

In sum, because the *TRAC* factors either favor the Government or are neutral, the Court finds that the circumstances here do not indicate unreasonable delay such that judicial intervention is required. *See, e.g.*, *Padala v. Selby*, No. 8:26-CV-00129-DFM, 2026 WL 1506356, at *4–6 (C.D. Cal. May 12, 2026). Accordingly, though the Court does not take lightly the effect of this delay on Plaintiffs, for the reasons stated above, the Court will nonetheless dismiss their undue delay claims. The Court will not grant leave to amend as to these claims, as there is no indication that additional facts would change the outcome. But the Court will dismiss the claims without prejudice "because additional delay could at some point ripen into an unreasonable delay[.]" *Aghchay v. U.S. Dep't of State*, No. CV 22-5708 PA (PVCX), 2022 WL 19569516, at *3 (C.D.

Cal. Dec. 20, 2022). As recognized by other district courts in similar circumstances, "[t]hough judicial intervention is not warranted at this juncture, the Court's calculus could change if the delay continues for a more extended period." *Infracost*, 732 F. Supp. 3d at 1258.

**D. Plaintiffs' Constitutional Claim**

Turning to Plaintiff's due process claim, the Government seeks dismissal because Plaintiffs lack a constitutionally protected interest in the State Department's adjudication of their or their family members' visas. Dkt. No. 9 at 7 (citing *Raihanoune v. U.S. Citizenship and Immigr. Servs.*, No. 1:24-cv-219, 2025 WL 510235, at *3 (E.D. Va. Feb. 13, 2025)). "A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phx.*, 24 F.3d 56, 62 (9th Cir. 1994) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972)).

The Government largely relies on *Department of State v. Muñoz*, 602 U.S. 899 (2024), and other cases applying that decision. Dkt. No. 9 at 7–8. *Muñoz* addressed a due process challenge to the denial of admission of a U.S. citizen's spouse and held that "a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country." 602 U.S. at 909. Plaintiffs only loosely address this claim in their response and underscore that the claim is "pled in the alternative[.]" Dkt. No. 11 at 10, 18. They contend that *Muñoz* is inapposite because the Complaint asserts a procedural—not substantive—due process challenge addressed to the State Department's "indefinite" failure to adjudicate their visa applications. Dkt. No. 11 at 10.

For the reasons discussed above, however, Plaintiffs have not alleged unreasonable delay in the processing of their applications. Thus, even assuming they have a constitutionally protected interest in timely adjudication, Plaintiffs have not plausibly alleged a deprivation of that interest. *See Tenorio v. Bitter*, No. EDCV 23-1581-KK-SHKX, 2024 WL 2873754, at *5 (C.D. Cal. May 1, 2024) (failure to state a claim for unreasonable delay under the *TRAC* factors foreclosed due

process claim based on the same delay); *Tareque v. Bitter*, No. 8:24-CV-00535-FWS-ADS, 2024 WL 3914507, at *8 (C.D. Cal. Aug. 13, 2024) (same).

Accordingly, the Court will dismiss Plaintiffs' procedural due process claim premised on the State Department's delay in processing their visa applications. Because it is unclear whether additional allegations might plausibly support a claim premised on procedural due process, the Court will grant leave to amend.[6]

## V. CONCLUSION

The Government's motion to dismiss (Dkt. No. 9) is GRANTED in part and DENIED in part.

(1) Counts I and II of the Complaint are DISMISSED without prejudice and without leave to amend.

(2) Count V of the Complaint is DISMISSED without prejudice and with leave to amend.

(3) The motion is otherwise DENIED.

(4) Plaintiffs may file an amended or supplemental complaint addressing post-filing developments in their visa cases, or otherwise clarifying their claims, no later than October 2, 2026.

Dated this 11th day of September, 2026.

Kymberly K. Evanson
United States District Judge

---

[6] As a final matter, the Government, in its reply brief, asks the Court to dismiss all claims against CBP because CBP was not involved in Plaintiffs' visa processing. Dkt. No. 13 at 1 n.2. This argument was raised for the first time in reply and is thus not properly before the Court. *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996) (holding such arguments "are waived"). Accordingly, the Court will not dismiss CBP from this case.